IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In the Matter of : <br> EQUIPMENT LEASSORS OF PA, INC., : <br> : <br> Debtor. : <br> : <br> : CIVIL ACTION <br> : NO. 02-2985 <br> : |  |

**MEMORANDUM and ORDER**

YOHN, J.                                                                                                    DECEMBER _____, 2002

      Appellant, Pelican Financial Corp. ("Pelican"), appeals from a final order of the bankruptcy court. That court awarded appellant an administrative claim of $3,134 resulting from the use and occupation of one parcel of appellant's property ("Parcel #3") by debtor, Equipment Leassors of Pennsylvania, Inc. ("ELP"). In reaching this determination, the bankruptcy court allowed Michael Foster ("Foster"), who had previously served as an officer and in-house counsel in appellant's company, to testify despite appellant's objections that his testimony violated the Pennsylvania Rules of Professional Conduct.

      On appeal, appellant argues that the bankruptcy court erred by 1) allowing Foster to testify in violation of the Pennsylvania Rules of Professional Conduct, 2) finding that debtor only made use of Parcel #3 during the time relevant to appellant's case, and 3) applying the

objective approach incorrectly to appellant's administrative claim.[1]

This court concludes that the bankruptcy court did not commit an error of law by holding that Foster's testimony did not implicate the Rules of Professional Conduct. Furthermore, because there is substantial evidence in the record to support the bankruptcy court's findings that debtor's assets remained only on Parcel #3 during the time in question, that court did not commit clear error on this factual issue. Finally, the court did not commit an error of law when it correctly recognized that the objective approach requires consideration of the fair market value of only those parcels of land actually used by the debtor. For these reasons, the decision of the bankruptcy court will be affirmed.

## BACKGROUND

This case involves the business relationship between debtor, a bankrupt company named Equipment Leassors of Pennsylvania ("ELP"), and the appellant company, Pelican Financial Corporation ("Pelican"). ELP manufactured and leased truck trailers[2] and helicopters. Appellant Br. at vii. The company operated from a large property in Coopersburg, Pennsylvania, which was owned by ELP's principle, William Thayer ("Thayer"). *Id.* According to an appraisal

---

[1] In its brief in support of its appeal, appellant stated the issues presented as follows:
A. Did the Appellant establish the fair rental value of the real estate it owned and on which the Debtor left substantial property?
B. Did the Appellant establish its Administrative Claim?
C. Did the Court err when it allowed the former counsel of the Appellant, Michael Foster, Esquire, to testify concerning his former client, the Appellant herein?

Appellant Br. at 4.

[2] Appellant describes "truck trailers" as items which "are used to carry merchandise in interstate commerce, more commonly called the trailer section of an eighteen-wheeler." Appellant Br. at 1.

submitted by Pelican, this property was divided into several "tax parcels," only three of which are at issue in this case. Rec. 5, Tr. at 16, line 18. ELP's main office building and warehouse are located on Parcel #1, which is 10.4184 acres in size. Rec. 2 at 2 (bankruptcy court opinion). Parcels #2 and #3 – 9.6474 and 1.683 acres, respectively – are vacant[3] and ELP stored its assets – namely, "various items of machinery and equipment" – on these parcels. *Id.* at 2-3. All of these parcels abut Route 309, which is a public roadway. *Id.* at 2.

On May 19, 1992, ELP filed for bankruptcy under Chapter 11. *Id.* at 3. Four years later, Thayer was forced to sell Parcels #1, #2, and #3 in order to pay taxes which he owed and to keep his business afloat. *Id.* The appellant in this case, Pelican, purchased these tracts in early 1996 both through tax and private sales, and took possession of them soon thereafter. *Id.* at 4. A number of ELP's assets, however, remained on the property for several months after the sale despite numerous orders of the bankruptcy court demanding their removal. *Id.* Because of ELP's inability or unwillingness to remove these assets, the bankruptcy court converted the case from Chapter 11 to Chapter 7 ("conversion") on July 18, 1996. *Id.*

According to the trustee of the debtor's estate, who was appointed by the bankruptcy court, only thirty of ELP's trailers remained on Parcel #3 at the time of conversion. *Id.* In a final effort to free Pelican's land of ELP's assets, the court approved the sale of these trailers and several other assets to an entity related to Pelican. *Id.* at 10. That company purchased the assets for a total of $50,000, of which the thirty trailers were ten percent of the total 300 trailers purchased. *Id.* at 9-10.

---

[3] By "vacant," the court means that the land was free from any improvements, such as the buildings located on Parcel #1.

Both parties agree that Pelican's administrative claim "pertains only to the Chapter 7 phase of the case," beginning on July 18, 1996 (the conversion date) and ending on June 18, 1997, the initial date of the hearing on the motion to sell ELP's assets to the entity related to Pelican. *Id.* at 3. The focus of Pelican's administrative claim, and hence this appeal, is the alleged storage of these assets on its property for the eleven months between these two dates. Pelican brought a motion for an administrative claim from the debtor's estate for the "rent,"[4] which ELP's estate owed to it for its occupation of the land during this time, and which the trustee opposed.

After four and half years of continuances,[5] the bankruptcy court held an evidentiary hearing on the validity and valuation of the claim[6] at which Foster, Pelican's former officer and in-house counsel, testified that, based on his observations at the time of conversion, ELP's assets remained only on Parcel #3. Rec. 5, Tr. at p. 33, lines 1-16. During the hearing, Pelican objected to this testimony on the ground that it violated the attorney-client privilege. The bankruptcy court, however, overruled this objection and allowed Foster to testify. Rec. 5, Tr. at p. 29, lines 10-25. Following the hearing, both parties requested permission to file supplemental briefs, which the bankruptcy court granted. In its post-hearing brief, Pelican made arguments

---

[4] The court uses the term "rent" loosely as the parties never entered into a lease agreement.

[5] *See* Rec. 2 at 1 (stating that the hearing was originally scheduled for November 13, 1996, but "was continued many times at the request of the parties" and, therefore, was not held until February 13, 2002).

[6] Although Pelican now argues that the hearing was simply to establish the validity of the claim, the bankruptcy court specifically stated that the purpose of the hearing was to calculate the claim's valuation. Rec. 5, Tr. at p. 51, line 19-23.

regarding the legitimacy and scope of Pelican's administrative claim, and raised an additional challenge to Foster's testimony: it argued that Rule 1.9(b) of the Pennsylvania Rules of Professional Conduct, which governs conflicts of interest between attorneys and their former clients, barred Foster's testimony. Rec. 2 at 7.

After evaluating the parties' arguments and the evidence presented, the bankruptcy court ultimately approved Pelican's administrative claim, but for substantially less money than Pelican had originally requested. Rec. 2 at 1. First, it rejected Pelican's argument that Foster's testimony in any way violated the Rules of Professional Conduct. Indeed, the court held that it did "not consider this scenario to implicate the proscription in Rule 1.9(b)." *Id.* at 8. It further stated that "even if the Rule was construed to apply, the exception for information which had generally become known would arguably apply also, given the nature of the 'information' at issue here; to wit: whether or not there were trailers and equipment located on Parcel #1 or Parcel #2." *Id*. Because Foster's recollection "confirmed in all respects [the debtor's] version of events" and "Pelican offered no evidence to directly rebut the testimony of Mr. Foster," the court credited Foster's testimony that debtor's trailers remained only on Parcel #3, and found it to be the only parcel used by debtor. *Id.* at 5 & 12.

The court held that the "objective approach" to evaluating administrative claims governed this case, and that therefore, the claim would "be determined based on the fair rental value without regard to the Trustee's asset sale." *Id.* at 12. The court then noted that Parcel #3 was fifteen percent of Parcels #2 and #3. *Id.* at 13. Relying on *Pelican's* appraisal, which estimated that the combined annual fair rental value of the vacant parcels (i.e. Parcels #2 *and* 3) was $22,800, the court then applied the percentage to this figure to produce the annual rental

5

value only for Parcel #3 of $3,420. *Id*. Finally, the court determined that the fair rental value of Parcel #3 for the eleven month period during which ELP's assets remained on Pelican's land was $3,134. *Id*. Pelican is now appealing the bankruptcy court's decision.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In so doing, this court must apply a clearly erroneous standard to review the bankruptcy court's factual findings and a de novo standard to review its conclusions of law. *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991); *see also* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). A finding of fact is clearly erroneous if a reviewing court has a "definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). A factual determination of the bankruptcy court will be accepted unless that determination is either "completely devoid of minimum evidentiary support" or "bears no rational relationship to the supportive evidentiary data." *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d. Cir. 1983).

## DISCUSSION

### I.

The first issue to be addressed is whether the bankruptcy court erred in allowing Foster to testify during its evidentiary hearing. Specifically, appellant argues that the Pennsylvania Rules of Professional Conduct foreclose Foster, an attorney admitted to the

Pennsylvania Bar, from testifying against appellant, his former client. Because the particular issue raised in this case is one of law, this court applies de novo review to the lower court's holding.[7] Because the bankruptcy court correctly determined that appellant's objections sounded in the law of evidence and, consequently, did not implicate the Rules of Professional Conduct, the court did not commit an error of law.

        In this case, appellant has confused the attorney-client privilege with an attorney's ethical obligations. While the two are deeply connected, the former is an evidentiary privilege and the latter is a state's means of regulating the conduct of those attorneys admitted to its bar. Thus, the former protects the relationship between a lawyer and his client from invasion by the court, and the latter regulates the relationship itself. This distinction is reflected in the comments to the Pennsylvania Rules of Professional Conduct, which state that "[t]he attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations *other than* those where evidence is sought from the lawyer through compulsion of law." PA. RULES OF PROF'L CONDUCT, R. 1.6 (2002) (emphasis added).

        In the instant case, the bankruptcy court correctly pointed out that, unlike most cases in which courts have applied the client-lawyer confidentiality rule, appellant in this case was not seeking to have Foster disqualified or removed from representing another party.[8]

---

[7] *See Bushirk v. Apollo Metals*, 307 F.3d 160, 173 (3d Cir. 2002) ("We exercise plenary review over a district court's determination on the legal issues underlying a claim of attorney-client privilege, and review the underlying facts for clear error.")

[8] *See, e.g., Slater v. Rimar, Inc.*, 338 A.2d 584, 589 (Pa. 1975) ("Where a breach of ethics is made to appear, the relief is usually the granting of a motion to disqualify and remove the offending lawyer, and has been employed in this State as well as other jurisdictions."); *McCarthy*

Instead, appellant objected to its former counsel testifying against appellant's interest at the bankruptcy court's evidentiary proceedings. This court agrees with the bankruptcy court's statement that "this scenario [does not] implicate the proscription in Rule 1.9(b)." Rec. 2 at 8.[9]

Because the bankruptcy court correctly stated and applied the law, that court simply did not commit legal error, and this court will affirm its holding.

II.

The second issue appellant raises on appeal is whether the bankruptcy court erred

---

*v. Southeastern Pennsylvania Transit Authority*, 776 A.2d 987, 989 (Pa. Super. Ct. 2001) (discussing those situations in which an attorney may be disqualified for violating the Rules of Professional Conduct).

[9] Although it is unclear whether appellant is appealing this specific issue, in the interest of thoroughness, the court also notes its approval of the bankruptcy court's decision that Foster's testimony in no way violated the attorney-client privilege.

In Pennsylvania, the issue of whether an attorney may testify against a former client is governed by 42 PA. CONS. STAT. ANN. § 5928 (West 2002). That statute states that "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." *Id.*

In this case, the privilege does not extend to Foster's observations of the property. The Pennsylvania Supreme Court has long held that the personal observations of an attorney which are not derived directly through communications with his client do not fall under the auspices of the attorney-client privilege. *See, e.g., Daniel v. Daniel*, 1861 WL 5973 at *16 (1861) (affirming a lower court's determination that counsel could testify that his client appeared mentally ill despite the fact that he would never have observed his client in that condition but for being his attorney).

Moreover, even if the privilege attaches to the "information" at issue in this case, it is evident that that information was not confidential. The Pennsylvania Supreme Court has stated that "[a] communication between an attorney and his client is not privileged if it takes place in the presence of a third person or of the adverse party . . .." Loutzenhiser v. Doddo, 260 A.2d 745, 748 (Pa. 1970). In this case, it is quite evident that third parties outside the realm of the attorney-client privilege viewed the land as all of the parcels abut Route 309, a public road. Consequently, any number of persons, none of whom acted as appellant's counsel, could have seen – and likely did see – the property during the time in question. Due to the overwhelmingly public nature of this information, it could not be considered confidential, and hence, the attorney-client privilege can not apply.

8

in determining that debtor only occupied Parcel #3 of appellant's land during the eleven month period in question. This is a question of fact, and consequently, the court must review it for clear error.[10] Because there is substantial evidence in the record to support the bankruptcy court's factual determinations, this court finds no clear error.

As the Supreme Court has held, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a)[11] demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (citing *Wainwright v. Witt*, 469 U.S. 412 (1985)). Consequently, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575-76 (citations omitted).

In this case, the testimony of Foster, whom the bankruptcy court found to be credible, supports the court's finding that debtor only used Parcel #3 during the relevant time period. Rec. 2 at 9 & 11. Foster stated that, at the time of conversion, debtor's assets remained only on Parcel #3. Rec. 5, Tr. at 33, lines 1-17. While appellant argued that Foster gave this testimony only in retaliation for appellant having instigated a suit against him in state court, the bankruptcy court was not persuaded by this argument. Rec. 2 at 8-9. The court reasoned that 1)

---

[10] *In re Brown*, 951 F.2d at 567 ("In an appeal from an order of a bankruptcy judge, a district court applies the clearly erroneous test to factual findings . . ..").

[11] Rule 52(a) of the Federal Rules of Civil Procedure details the standards applied to a trial court's findings of fact.

Foster's testimony was credible because he had testified involuntarily and pursuant to a subpoena, 2) his testimony did not reflect favorably upon him as he admitted that, in an internal memorandum, he exaggerated the scope of appellant's administrative claim, and 3) his testimony corroborated the trustee's description of events. *Id.* at 7 & 9.

Moreover, appellant offered no evidence that directly contradicted Foster's testimony. First, appellant produced internal reports drafted by Foster, which while based on the totality of appellant's land, did not state that debtor's assets or property were abandoned on Parcels #1 and #2. *See* Rec. 8 (providing a copy of Foster's internal memorandum); Rec. 5, Tr. at 4–47 (discussing the memorandum). Second, appellant offered into evidence the statement that "millions of dollars of assets and a thousand trailers" were located on the parcels of land, which debtor's attorney made at a previous hearing on a different issue. This statement did not contradict Foster's statements because the comments of debtor's attorney refer to the time *prior to* conversion. Rec. 5, Tr. at 9, line 11 (explaining that the statement was made in March 1996). In short, the evidence that appellant introduced at the evidentiary hearing was either irrelevant or hyperbolic; in any event, it did not directly rebut the testimony of Foster.

Because the bankruptcy court acted well within its discretion by crediting Foster's testimony, which clearly substantiates the bankruptcy court's findings of fact, that court did not commit clear error.

III.

Finally, appellant argues that the bankruptcy court incorrectly articulated the objective approach for evaluating appellant's claim for an administrative expense. Specifically, appellant contends that the bankruptcy court improperly narrowed the scope of that test by only

10

evaluating the fair rental value of the property which debtor actually used, rather than that of the entirety of appellant's land.[12] This is a question of law, which the court reviews de novo.[13] Because the bankruptcy court correctly stated that the objective approach evaluates the fair market value of only the parcel occupied and used by the debtor, it did not commit an error of law.

Administrative claims of the sort which appellant seeks are governed by 11 U.S.C. § 503(b)(1)(A). That provision, read in conjunction with 11 U.S.C. § 507, states that claims for "the actual, necessary costs and expenses of preserving the estate" will be given priority status amongst a debtor's creditors. As our Court of Appeals has held, "[t]here is no question . . . that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled." *In the Matter of Zagata*, 893 F.2d 624, 627 (3d Cir. 1990). That court further explained that "a debtor is generally required to pay only a reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease." *Id.*

In order to determine the reasonable value of debtor's use of appellant's property, the bankruptcy court applied what is commonly referred to as the objective approach. Under this approach, "the lessor is entitled to collect the fair rental value of the leased premises so long as

---

[12] While the parties discuss the subjective approach in their briefs, the court notes that appellant does not challenge the bankruptcy court's decision to apply the objective approach. Rather, it challenges only the definition or scope of that approach. Consequently, this court sees no reason to expound on the subjective approach. For more on that test, see *In re Lease-A-Fleet*, 140 B.R. 840, 846 (Bankr. E.D. Pa. 1992).

[13] *In re Brown*, 951 F.2d at 567 ("In an appeal from an order of a bankruptcy judge, a district court applies . . . plenary review to questions of law.").

the debtor is *occupying* the leased property and *using* it to help preserve the estate." *In re F.A. Potts & Co., Inc.*, 137 B.R. 13, 17 (E.D.Pa. 1992) (emphasis added); *see also In re Cornwall Paper Mill Co.*, 169 B.R. 844, 850-51 (Bankr. D.N.J. 1994) (defining the objective approach as "measur[ing] the landlord's claim by the reasonable value of the leased property without regard to the actual use by the debtor"); *In re Mohawk Industries, Inc.*, 54 B.R. 409, 412 (Bankr. D. Mass. 1985) (same).

Pursuant to this well-established rule, the bankruptcy court only considered the value of that land which debtor continued to occupy and use after the property sale to appellant. As previously discussed, the bankruptcy court determined that debtor only occupied and used Parcel #3. This occupation and use in no way damaged appellant's ability to make use of Parcels #1 and #2. As appellant's own appraiser made clear, appellant's land is separated into three distinct parcels. Consequently, appellant could lease one parcel of land while maintaining control over the others, especially since appellant was not bound by any lease agreement with debtor regarding Parcel #3, let alone any of the other parcels. Moreover, it appears from the record that appellant *did* actually lease some segment of Parcel #1. *See* Rec. 5, Tr. at 53-54, lines 25, 1-6 (stating that Pelican had rented the office building on Parcel #1 to another company).

Finally, while the objective approach is not without its limits, this case never reaches those limits. In *In re C & L Country Market of New Market, Inc.*, the bankruptcy court held that "in the absence of countervailing circumstances, the actual, necessary costs and expenses of preserving assets of the estate under §503(b)(1)(A) cannot exceed the value of those assets." 52 B.R. 61, 63 (Bankr. E.D.Pa. 1985). In the instant case, however, the value assessed against debtor did not exceed the value of the assets stored on appellant's property. Neither party

has alleged that the value of the thirty truck trailers left on appellant's property was less than the $3,314 claim allowed by the bankruptcy court.

In sum, the bankruptcy court correctly stated the objective standard for reviewing administrative claims, and therefore, committed no legal error.

CONCLUSION

In sum, the bankruptcy court did not commit an error of law by holding that Foster's testimony did not implicate the Rules of Professional Conduct. Moreover, because there is substantial evidence in the record to support the factual determination that debtor's assets remained only on Parcel #3 during the time in question, the court did not commit clear error. Finally, because the objective approach evaluates only the fair market value of the property actually used by the debtor, the court did not commit legal error. For these reasons, this court will affirm the bankruptcy court's decision.[14] An appropriate order follows.

---

[14] The court notes that appellant also requested that this court 1) grant appellant time to amend its brief and 2) reopen the bankruptcy court record or remand the case to that court so that, in either event, appellant may present additional evidence in support of its claims. These requests will be denied.

First and foremost, appellant cited no legal authority in support of granting any of these requests. Second, the court sees no practical reason why it should take such an extreme measure. Appellant had ample opportunity to gather and present evidence to the bankruptcy court regarding the extent of its administrative expense. This administrative claim has been pending since October 1996 and has been continued several times over the course of multiple years. Rec. 2 at 1. Despite these courtesies, appellant has failed to produce basic evidence in support of its claim. While appellant now wishes to admit into evidence photographs of its property from the time in question, it has provided no legitimate reason for failing to produce this evidence previously. In short, appellant has had several bites at the apple, and this court is not inclined to offer it another. Moreover, the record as it now stands is sufficiently complete for this court to render a decision. Consequently, the court will deny these requests.